UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PAUL HANEY                                                                                              PLAINTIFF

VS.                                                                      CIVIL ACTION NO. 3:08cv482-DPJ-JCS

CONTINENTAL CASUALTY COMPANY, ET AL.                                          DEFENDANTS

ORDER

This insurance coverage dispute is before the Court on Defendant Continental Casualty Company's motion for summary judgment [20]. Having considered the parties' submissions, oral arguments, and the applicable law, the Court finds Defendant's motion is well taken and should be granted.

I.   Facts/Procedural History

On July 7, 2006, Plaintiff Paul Haney entered into an agency contract with United American Insurance Company ("UAIC"), according to which he would sell UAIC insurance products. The agency contract included a non-compete provision that prohibited Haney, during the term of the agency contract and for two years thereafter, from disclosing UAIC's confidential information, selling or attempting to sell competitors' products, inducing or attempting to induce UAIC's policyholders not to renew their policies, and inducing or attempting to induce UAIC's other agents to terminate their relationship with UAIC or to sell insurance for any other company. According to the Complaint, Haney's agency relationship with UAIC terminated in the first quarter of 2007.

On January 22, 2008, UAIC filed a complaint (the "underlying complaint") in the Circuit Court of Rankin County, Mississippi, against Haney and others, asserting claims for injunctive relief (Count I), violations of the Mississippi Uniform Trade Secrets Act (Count II), civil

conspiracy and/or aiding and abetting (Count III), breach of contract (Count IV), tortious interference with contract (Count V), and tortious interference with business relations (Count VI).

Defendant Continental Casualty Company enters the picture because it issued a professional services liability insurance policy, typically referred to as an errors and omissions policy, to Haney as an insured. Pursuant to that policy, Haney filed a claim with Continental Casualty seeking defense and indemnification of the claims UAIC asserted against him. Continental Casualty denied the claim on March 18, 2008. Haney brought this suit against Continental Casualty in the Circuit Court of Madison County, Mississippi, alleging breach of contract and bad faith. Continental Casualty removed the case and thereafter filed the subject motion for summary judgment. The Court heard oral argument on December 10, 2009, and it thereafter requested additional briefing. Personal and subject matter jurisdiction exist, and the motion is now ripe for consideration.

II.     Analysis

    A.     Standard of Review

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash*., 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc*., 530 U.S. 133, 150 (2000).

B. Duty to Defend

Under Mississippi law, which applies in this diversity action, "[a] liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty to defend those claims which fall outside the coverage of the policy." *Sennett v. U.S. Fid. & Guar. Co.*, 757 So. 2d 206, 212 (Miss. 2000). Whether such a duty exists turns on the "allegations of the complaint" rule (also called the eight-corners test), under which the Court looks at the allegations in the underlying complaint to determine whether the insurer has a duty to defend. *Coleman v. Acceptance Indem. Ins. Co.*, No. 5:08cv260-DCB-JMR, 2009 WL 1873742, at *2 (S.D. Miss. June 29, 2009) (citations omitted).

3

Finally, because the duty to defend is broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify. *Evanston Ins. Co. v. Neshoba County Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 346 n.1 (S.D. Miss. 2006).

When considering the duty to defend, the court must compare the allegations of the complaint to the language of the policy. The trial court, not the jury, must determine the meaning and effect of an insurance contract if the contract is clear and unambiguous. *Jackson v. Daley*, 739 So. 2d 1031, 1041 (Miss. 1999). A question of fact is presented only when an ambiguity exists. *Id*. The policy is ambiguous when susceptible to "two or more *reasonable* meanings." *J & W Foods v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998) (emphasis added).

On the other hand, "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Burton v. Choctaw County*, 730 So. 2d 1, 8 (Miss. 1999). "A court must effect 'a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.'" *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997) (quoting *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987)). Moreover, an insurance policy is a contract between the insurer and the insured, "with the rights and duties set out by the provisions of the insurance policy." *Sennett*, 757 So. 2d at 212 (quoting *Hare v. State*, 733 So. 2d 277, 281 (Miss. 1999)). As such, "insurance policies which are clear and unambiguous are to be enforced according to their terms as written," and "the plain terms of the insurance contract should be binding and controlling." *Id*.

4

In this case, Continental Casualty argues that it had no duty to defend because (1) the underlying action does not allege "wrongful acts" as defined by the policy; (2) the underlying action is not a "claim" as defined by the policy; and (3) Exclusion 24 applies to all claims related to the use of confidential information. Although the Court would normally begin by addressing the coverage issues, the parties agree that many of Plaintiff's claims are excluded. Therefore, the Court will begin with Exclusion 24 in order to better frame the remaining issues.

1. Exclusion 24

Exclusions are found in Section XIX of the policy. Exclusion 24 states:

The insurer shall not be liable to pay any **Loss** in connection with any **Claim**:

based upon, directly or indirectly arising out of or in any way involving the use of confidential information by an **Insured**, including but not limited to such use for the purpose of replacement of coverage.

Haney conceded in his summary judgment response that Exclusion 24 precludes the duty to defend Count II, which arises under the Mississippi Trade Secrets Act. He also admitted that the exclusion precludes the duty to defend all claims to the extent they are based on solicitation of UAIC's customers, because the alleged solicitation involved use of confidential customer lists. The Court agrees with both assessments. Haney contends, however, that those claims premised on the solicitation of agents would in no way relate to confidential information, as agent lists are available to the public. Defendant offered no real response, and again the Court agrees with Plaintiff's assessment.

Accordingly, the Court dismisses Haney's claim for a defense as to Count II and all other counts of the underlying complaint to the extent they are based on solicitation of customers. The

following substantive claims survive Exclusion 24 to the extent they are premised on solicitation of agents: breach of contract (Count IV) and tortious interference (Counts V and VI).[1]

2. Wrongful Acts

Defendant argues that there is no duty to defend or indemnify because the underlying complaint alleges no "Wrongful Acts." The duty to defend is found in Section VI of the policy and states in relevant part:

> If a **Claim** is made against the **insured** . . . the Insurer shall have the right and duty to defend such **Claim**, even if any of the allegations of the **Claim** are groundless, False or fraudulent.

Ex. A to Def.'s Mot. for Summary Judgment [20] (bold in original to indicate defined terms). "Claim" is defined as follows:

> a. a written demand for monetary damages, or
>
> b. a civil adjudicatory or arbitration proceeding for monetary damages,
>
> against an **Insured** for a **Wrongful Act**, including any appeal therefrom brought by or on behalf of or for the benefit of any **Client.**

*Id.* (bold in original to indicate defined terms). The duty to indemnify found in Section I of Coverage Part A likewise requires proof of a "Wrongful Act":

> The Insurer shall pay on behalf of the **Insured** all **Loss** which the Insured shall become legally obligated to pay resulting from a **Claim** first made against them . . . for a **Wrongful Act** taking place on or after the **Prior Acts Date** solely in rendering or failing to render **Professional Services**.

Ex A to Def.'s Mot. for Summary Judgment [20] at 23.

---

[1] The claims for injunctive relief (Count I) and civil conspiracy and/or aiding and abetting (Count III) are merely derivative of the remaining claims. Thus, if no duty exists as to the remaining claims, there is no duty to defend with respect to Counts I and III.

Under the clear terms of the policy, the duty to defend and indemnify is triggered by "Wrongful Acts." "Wrongful Acts" are defined as "any negligent act, error or omission of, or **Personal Injury** caused by, the **Insureds** in rendering or failing to render **Professional Services**." Ex. A to Def.'s Mot. for Summary Judgment [20] at 8. Based on this definition, the parties agree that "Wrongful Acts" do not include intentional conduct. This further refines the scope of the case, eliminating the duty to defend to the extent intentional conduct is alleged. Moreover, Plaintiff conceded during argument that coverage is precluded for the tortious interference claims found in Counts V and VI because those claims require "intentional and willful" conduct. *AmSouth Bank v. Gupta*, 838 So. 2d 205, 214 (Miss. 2002). Thus, two more claims have now been eliminated, leaving only the claim that Defendant should have provided a defense to UAIC's breach of contract claim (Count IV), to the extent that claim is based on alleged solicitation of UAIC's agents.

On this final point, the parties raise a number of arguments. First, they dispute whether Count IV even pleads a negligent error or omission as to the solicitation of agents. They also debate whether the underlying matter is even a "Claim," which by definition must be "brought by or on behalf of or for the benefit of any **Client**." Defendant claims that UAIC, the entity bringing the underlying case, was not Haney's "Client." Haney disagrees, but it ultimately does not matter whether UAIC was a "Client," because soliciting UAIC's agents was not a "Professional Service."

As stated above, "Wrongful Acts" are defined as acts that occur while "rendering or failing to render **Professional Services**." Ex. A to Def.'s Mot. for Summary Judgment [20] at 8. "Professional Services" is defined as follows:

7

4. **Professional Services** means:
   a. with respect to an **Agent or General Agent**, only the following services to the extent they are provided in the course and scope of the **Insured's** business as an **Agent or General Agent** and such **Agent or General Agent** has the appropriate license in both the **Client's** resident state or jurisdiction and the state or jurisdiction in which the business is conducted:

   I. services as a notary public;

   ii. sale, attempted sale or servicing of employee benefit plans, individual retirement plans and KEOGH retirement plans;

   iii. **Administration of Employee Benefit Plans**

   iv. Sale, attempted sale or servicing of life insurance, accident and health insurance, managed health care organization contracts, disability income insurance, fixed annuities, and 24 hour care coverage (as defined by statutory law);

   v. financial planning activities in conjunction with services described in paragraphs I. thru iv. of this definition, whether or not a separate fee is charged;

   vi. Supervision, management and training of an **Agent** by a **General Agent** with respect to activities otherwise covered by this Coverage Part A. Provided, however, any such coverage shall not apply to any **Claim** alleging any employment practices of any kind.

*Id.* at 23-24 (bold in original).

Plaintiff suggests that soliciting agents somehow falls within the scope of selling or servicing insurance plans or relates to the supervision, management or training of agents, but the plain language of the policy will not support that contention. Soliciting agents is clearly distinct from selling or servicing policies. With respect to section 4(a)(vi), soliciting is different from "supervision, management and training." In addition, the "supervision, management and training" must relate to "activities otherwise covered by this Coverage Part A." Soliciting agents is not the same as supervising, managing or training them to provide the enumerated professional

8

services. Finally, the policy states that any coverage for management and training "shall not apply to any Claim alleging any employment practices of any kind."

Plaintiff's arguments in this regard are similar to those rejected by the Mississippi Supreme Court in *Shelton v. American Insurance Co.*, 507 So. 2d 894 (Miss. 1987) (holding that claims based on fraudulent misrepresentations while recruiting an employee were not "professional services" of the sort the errors and omissions policy covered). Under the clear and unambiguous language of the policy, soliciting agents is not a "Professional Service" for which coverage exists. As a matter of law, the only remaining claim–breach of the non-solicitation agreement–is not a covered event.[2]

C. Bad Faith Claim

Because no duty to defend exists, the bad faith claim is likewise due to be dismissed. However, even if a duty had been found as to some portion of some claim, the bad faith claim would still fail. Haney correctly conceded that there was no duty to defend the vast majority of the underlying complaint. At most, he argued that the policy contained ambiguities with respect to the solicitation of agents. In *United States Fidelity and Guaranty Co. of Mississippi v. Martin*, the trial court found that the policy was ambiguous as to coverage, and the Mississippi Supreme Court agreed. 998 So. 2d 956, 971 (Miss. 2008). The court then held, "Accordingly, it follows that an insurance company could legitimately deny coverage under a policy that has ambiguous provisions for coverage." *Id*. This is such a case.

---

[2]By this same logic, Plaintiff has not presented a "Claim," which is defined as a demand related to a "Wrongful Act." Again, "Wrongful Acts" relate to "Professional Services."

9

IV.     Conclusion

Both parties raised additional arguments that the Court fully considered but for which no ruling is necessary.  Defendant's Motion for Summary Judgment is hereby granted.  A separate judgment will be entered pursuant to Rule 58.

**SO ORDERED AND ADJUDGED** this the 15th day of January, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE